IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KERI MCELMURRY AND KAREN   )
MRAZEK INDIVIDUALLY, and on )
Behalf of All Similarly     )
Situated                    )        No.  CV-04-642-HU
                            )
            Plaintiffs,     )
                            )
        v.                  )
                            )
US BANK NATIONAL ASSOCIATION, )     FINDINGS & RECOMMENDATION
AND ITS AFFILIATES AND SUB- )
SIDIARIES, DOES 1-25,       )
                            )
            Defendants.     )
_____)

J. Dana Pinney
A.E. Bud Bailey
David Schuck
BAILEY, PINNEY & ASSOCIATES, LLC
18765 S.W. Boones Ferry Rd., Suite 125
Tualatin, Oregon 97062-8438

        Attorneys for Plaintiffs

Carol J. Bernick
Christopher F. McCracken
Kevin H. Kono
Jennifer A. Nelson
DAVIS WRIGHT TREMAINE, LLP
1300 S.W. Fifth Avenue, Suite 2300
Portland, Oregon 97201

        Attorneys for Defendants

1 - FINDINGS & RECOMMENDATION

HUBEL, Magistrate Judge:

Plaintiffs Keri McElmurry and Karen Mrazek bring this Fair Labor Standards Action on behalf of all similarly situated plaintiffs and against US Bank National Association and its affiliates and subsidiaries and Does 1-25. Plaintiffs seek to bring this case as a collective action under 29 U.S.C. § 216(b).

Plaintiffs bring four claims for relief: (1) a claim on behalf of sales and service managers (SSMs) that they were improperly classified as exempt employees and thus, defendant has failed to pay these plaintiffs 1½ times their regular rate of pay for any hours worked over forty in a week; (2) a claim challenging defendant's alleged "rounding down" policy. This claim contends that non-exempt hourly employees are instructed to round their hours worked to the closest tenth of an hour which, plaintiffs allege, results in employees under-reporting their actual hours worked. Claim two alleges that the rounding down has resulted in a lack of overtime being paid to some employees ("Rounding OT" claim); (3) Claim three is a similar challenge to the rounding down policy, but contends that the rounding down has resulted in some employees being paid less than the federal minimum wage ("Rounding MW" claim); and (4) a supplemental state claim which contends that defendant has failed to timely pay wages owing upon an employee's termination. Plaintiffs allege that the three FLSA claims are willful violations.

Presently, defendant moves to (1) dismiss the second, third, and fourth claims, or alternatively to stay those claims; (2) dismiss the affiliates and subsidiaries and the Does 1-25; (3) make ¶ 29a of the Complaint more definite and certain; (4) strike ¶ 22

2 - FINDINGS & RECOMMENDATION

1   of the Complaint; and (5) strike plaintiffs' claim for prejudgment
2   interest.

3       Plaintiffs move for an order that notice be sent to the
4   putative opt-in collective action members.   Plaintiffs also move
5   for an order allowing the equitable tolling of the statute of
6   limitations for all putative class members during the pendency of
7   the notice process.   Defendant moves to strike portions of the
8   declarations that plaintiffs submitted in support of plaintiffs'
9   motion.

10      I recommend that defendants' Rule 12 motions be granted in
11  part and denied in part, that plaintiffs' motion for notice be
12  denied, and that defendant's motions to strike be denied as moot.

13  I.  Defendant's Rule 12 Motions

14      A.  Rule 12(b)(6) Standards

15      On a motion to dismiss, the court must review the sufficiency
16  of the complaint.   <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).
17  The court should construe the complaint most favorably to the
18  pleader:

19          In evaluating the sufficiency of the complaint, we
            follow, of course, the accepted rule that the complaint
20          should not be dismissed for failure to state a claim
            unless it appears beyond doubt that the plaintiff can
21          prove no set of facts in support of his claim which would
            entitle him to relief.
22

23  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>American Family Ass'n,

24  Inc. v. City & County of San Francisco</u>, 277 F.3d 1114, 1120 (9th

25  Cir. 2002).   The allegations of material fact must be taken as

26  true.  <u>Moyo v. Gomez</u>, 40 F.3d 982, 984 (9th Cir. 1994).

27      B.  Discussion of Rule 12(b)(6) Motion

28      Defendant argues that the Complaint fails to state a claim as

3 - FINDINGS & RECOMMENDATION

1  to the rounding policy because it fails to allege that McElmurry or
2  Mrazek were actually subject to the policy or that they were ever
3  injured by the policy.  Defendant contends that even with liberal
4  notice pleading standards, plaintiffs fail to allege the basic
5  facts to support their rounding policy claims, both as to overtime
6  and minimum wage.  Defendant asserts that the Complaint is devoid
7  of any factual allegations that the rounding policy was ever
8  applied to either named plaintiff, that any such rounding policy
9  caused either named plaintiff to work overtime for which she was
10 not paid, that any rounding policy caused either named plaintiff's
11 wages to drop below the federal minimum wage, and that any alleged
12 rounding violated the law.

13 In response, plaintiffs point to paragraphs 29, 42, 43, 44,
14 and 45 of the Complaint to support their position that they
15 adequately state a claim.  I agree with plaintiffs.  In addition to
16 the paragraphs plaintiffs cite, I find that paragraphs 18, 22, 29b,
17 39, and 50 provide additional facts in support of both of the
18 rounding claims.  Read together, the facts alleged in these
19 paragraphs sufficiently state that the named plaintiffs have
20 rounding claims under the federal notice pleading standard.

21 I note, however, that because I grant other parts of
22 defendant's motion and plaintiffs will therefore be submitting an
23 amended complaint, plaintiffs may well want to make the allegations
24 of these rounding claims more definite and certain by actually
25 specifying (1) which named plaintiff brings which particular claim;
26 (2) that the rounding policy applied to each named plaintiff or
27 which one if only one; and (3) that each named plaintiff (or which
28 one) was injured by the policy and in which way - overtime, minimum

4 - FINDINGS & RECOMMENDATION

1    wage, or both.

2        And, as to the rounding minimum wage claim, in light of the

3    facts put forth by defendant during oral argument on this motion

4    that one of the plaintiffs earned substantially more per hour than

5    minimum wage and thus, could not possibly assert a minimum wage

6    violation claim even if she proves a claim showing she was not paid

7    for certain time as a result of the rounding policy, plaintiffs

8    must, as always, assure themselves and their counsel that they have

9    a good faith basis for asserting this claim.  Plaintiffs may want

10   to include express allegations as to which named plaintiff, or

11   both, earned an hourly wage such that the rounding policy created

12   an effective hourly rate below the applicable minimum wage for the

13   named plaintiff(s).

14       C.  Dismissal of the Late Pay/Termination Claim

15       This claim seeks penalties for the alleged late payment of

16   wages upon termination.  The Complaint refers to Oregon Revised

17   Statute § (O.R.S.) 652.140 and a California statute. Compl. at ¶¶

18   56, 63.  It also refers to any other "state's statute requiring

19   timely payment of final wages." Id. at ¶ 63.  Defendant

20   articulates two bases for dismissing this claim:  (1) lack of

21   supplemental jurisdiction; and (2) dismissal to the extent it

22   asserts claims under late pay statutes of states other than Oregon.

23           1.  Supplemental Jurisdiction

24       Defendant makes two arguments in support of its position that

25   taking supplemental jurisdiction over the late pay/termination

26   claim is inappropriate in this case.  Defendant contends first that

27   the late pay/termination claim does not share a common nucleus of

28   operative facts with the other claims and second, that there are

5 - FINDINGS & RECOMMENDATION

1    exceptional circumstances which offer compelling reasons to decline
2    supplemental jurisdiction.

3                    a.    Common Nucleus of Operative Facts
4         Federal courts have supplemental jurisdiction over state law
5    claims that "form part of the same case or controversy under
6    Article III of the United States Constitution" as claims over which
7    the court has original jurisdiction.    28 U.S.C. § 1367.    Claims
8    form part of the same case or controversy if they arise from a
9    common nucleus of facts and if they would normally be tried
10   together.    Bahrampour v. R.O. Lampert, 356 F.3d 969, 978 (9th Cir.
11   2004).

12        However, claims do not necessarily share a common nucleus of
13   facts merely because they arise from an employer-employee
14   relationship.    Lyon v. Whisman, 45 F.3d 758, 762-63 (3d Cir. 1995)
15   (rejecting supplemental jurisdiction in an FLSA case because "there
16   is so little overlap between the evidence relevant to the FLSA
17   claims" and the state contract and tort claims and noting that the
18   FLSA claim involved "very narrow, well-defined factual issues about
19   hours worked during particular weeks.").

20        Defendant argues that there is no common nucleus of operative
21   facts between the FLSA SSM and rounding claims on the one hand, and
22   the state late pay/termination claim on the other.    The FLSA
23   claims, defendant notes, relate to alleged violations during the
24   employment relationship and require proof regarding hours worked
25   and wages paid during each particular work week at issue.    The SSM
26   claim will require plaintiffs to present evidence about the duties
27   of SSMs at various banks.    The rounding claims will require proof
28   that defendant wrongfully required employees to round their time

6 - FINDINGS & RECOMMENDATION

and that this alleged rounding resulted in overtime and minimum wage violations. Thus, the focus of these claims is on what duties employees had while they were employed and their payroll records while they were employed.

In contrast, the late pay/termination claim involves proof of events occurring at or after the end of the employment relationship. Relevant evidence includes the factual circumstances of the termination of the employment relationship and then what wages were due and owing at the end of the relationship, and when they were paid.

Defendant argues that due to the factual distinctions between the FLSA claims and the late pay/termination claim, there is no overlap between the evidence required to prove plaintiffs' FLSA claims and the evidence required to prove the state law claims. They are wholly dissimilar.

While defendant raises a valid point about the relationship between the FLSA claims and the "traditional" late pay/termination claim in which there is no dispute about what final wages are owed, but simply a delay in paying them, plaintiffs' late pay/termination claim is broader than this "traditional" type of late pay/termination claim. As plaintiffs explain, while some penalties may be owing by a straightforward late payment of undisputed wages, an additional basis for the late pay/termination claim is grounded in the rounding and SSM claims. That is, to the extent a plaintiff is owed wages because of a well-founded SSM or rounding claim (either overtime or minimum wage), then any such wages would not have been paid upon termination and thus, additional penalties for the late payment of such wages should be forthcoming under Oregon,

7 - FINDINGS & RECOMMENDATION

1  and other states', laws.

2      I agree with plaintiffs that to the extent the late

3  pay/termination claim plaintiff(s) also have an SSM or rounding

4  claim, there is some overlap of facts providing for a common

5  nucleus of operative fact.  If an SSM or rounding plaintiff is

6  successful in proving an FLSA violation, the late pay issue arises

7  out of the same nucleus of operative fact if that plaintiff has

8  been terminated.    This is sufficient for the exercise of

9  supplemental jurisdiction.

10              b.  Exceptional Circumstances

11      The court may decline to exercise supplemental jurisdiction

12  where, "in exceptional circumstances, there are . . . compelling

13  reasons" for doing so.   28 U.S.C. § 1367(c)(4).   "Compelling

14  reasons" include "those that lead a court to conclude that

15  declining jurisdiction best accommodate[s] the values of economy,

16  convenience, fairness, and comity." Executive Software N. Am.,

17  Inc. V. United States Dist. Ct. For the Central Dist. Of Calif., 24

18  F.3d 1545, 1557 (9th Cir. 1994) (internal quotation omitted).  A

19  "pending state court action probably constitutes 'exceptional

20  circumstances.'" Polaris Pool Sys. V. Letro Prods., Inc., 161

21  F.R.D. 422, 425 (C.D. Cal. 1995).  Defendant contends that because

22  there are two pending state court cases raising the rounding and

23  late pay/termination claims, I should decline to exercise

24  supplemental jurisdiction.

25      I do not find that these two pending cases qualify as an

26  "exceptional circumstance"  to support declining the exercise of

27  supplemental jurisdiction.  Unlike in Polaris Pool Systems, where

28  the state court action involved the same parties as the federal

8 - FINDINGS & RECOMMENDATION

1  court action, neither of the named plaintiffs in the instant case

2  is a plaintiff in the state court cases.  While a class action

3  motion has been filed and argued in one of those cases, there has

4  been no resolution of the motion as of yet.  No class action motion

5  has been filed in the other case.  Given this distinction, I do not

6  accept defendant's argument that exceptional circumstances to

7  defeat supplemental jurisdiction are present.

8  　　　　2.  Late Pay/Termination Claims Under Other State Laws

9  　　　Next, defendant argues that the late pay/termination claim

10  should be dismissed to the extent plaintiffs seek recovery under

11  late pay/termination statutes other than Oregon's.  I agree with

12  defendant. As discussed below, I recommend that plaintiffs' motion

13  for notice to the putative class be denied.  As such, the case

14  remains brought by the two named plaintiffs, only one of which has

15  a late pay/termination claim.  That plaintiff, Mrazek, brings her

16  claim under Oregon law.  Based on the facts alleged in the

17  Complaint, she has no standing to assert a late pay/termination

18  claim for relief under any other state's late pay/termination

19  statute.  I recommend that this motion be granted.

20  　　D.  Dismissal/Abstention of Rounding and Late/Pay
    　　　　Termination Claims Under <u>Colorado River</u>.

21

22  　　　Defendants move to dismiss or abstain the rounding and late

    pay/termination claims because class actions encompassing what

23  defendant calls identical claims, are pending in state court.

24  There are two cases in Multnomah County Circuit Court which raise

25  the claims brought in this case.  In <u>Rivera v. U.S. Bank National</u>

26  <u>Association</u>, Mult. Co. Case No. 0305-05045, the plaintiffs

27  challenge the same rounding policy, both as to its effects on

28

9 - FINDINGS & RECOMMENDATION

1   overtime and minimum wages, as they challenge in this action.  The
2   claim in <u>Rivera</u> is brought under Oregon law, however, not the FLSA.
3   The <u>Rivera</u> plaintiffs also bring a state law late pay/termination
4   claim like the one pending here.

5        In <u>Belknap v. U.S. Bank National Association</u>, Mult. Co. Case
6   No. 0301-00042, the plaintiffs assert a state late pay/termination
7   claim like the one pending here.  Both <u>Rivera</u> and <u>Belknap</u> have been
8   filed as class actions under Oregon Rule of Civil Procedure 32.  A
9   class action certification motion has been filed and argued in
10  <u>Belknap</u>, but no decision on that motion has been issued.  No such
11  motion has been filed in <u>Rivera</u> although defendant represents, and
12  plaintiffs have not disputed, that the <u>Rivera</u> plaintiffs plan to
13  file such a motion in the future.

14       Defendant argues that this case should be dismissed or stayed
15  in light of <u>Rivera</u> and <u>Belknap</u>.  As defendant notes, both of those
16  cases were filed before this case.  Defendant argues that while the
17  rounding claims in <u>Rivera</u> are based on state rather than federal
18  law, neither law is controlling and both <u>Rivera</u> and this case are
19  based on the identical factual predicate.

20       Defendant further notes that while this case is filed as a
21  nationwide collective action, the only plaintiffs are Oregon
22  residents and thus, relief under Oregon state law as a class member
23  in <u>Rivera</u> and <u>Belknap</u> would fully compensate plaintiffs. Moreover,
24  defendant notes, plaintiff Mrazek is actively participating in
25  <u>Belknap</u> by filing a declaration in support of the class
26  certification motion pending in that case.  Thus, defendant argues,
27  plaintiffs would be fully protected if I defer to the currently
28  pending state actions and such deference would avoid piecemeal

10 - FINDINGS & RECOMMENDATION

1   adjudication of "identical" claims.

2       Finally, defendant argues, dismissing or staying the claims in

3   this case will discourage what defendant calls plaintiff's blatant

4   attempt at forum shopping.

5       In response, plaintiff notes that concurrent actions in a

6   state court are "no bar to proceedings concerning the same matter

7   in the Federal court having jurisdiction." Colorado River Water

8   Conservation Dist. v. United States, 424 U.S. 800, 820 (1976).

9   There is a "heavy obligation" on federal district courts to

10  exercise jurisdiction given them under the Constitution and laws of

11  the United States. Id. at 818, 820.

12      "District courts have an obligation and a duty to decide cases

13  properly before them, and '[a]bstention from the exercise of

14  federal jurisdiction is the exception, not the rule.'" City of

15  Tucson v. U.S. West Communications, Inc., 284 F.3d 1128, 1132

16  (2002) (quoting Colorado River, 424 U.S. at 813). As explained in

17  a 2002 case:

18          Under Colorado River, considerations of "wise judicial
            administration, giving regard to conservation of judicial
19          resources and comprehensive disposition of litigation,"
            Colorado River, 424 U.S. at 817, 96 S. Ct. 1236, may
20          justify a decision by the district court to stay federal
            proceedings pending the resolution of concurrent state
21          court proceedings involving the same matter, Intel Corp.
            v. Advanced Micro Devices, Inc., 12 F.3d 908, 912 (9th
22          Cir. 1993). "[E]xact parallelism" is not required; "[i]t
            is enough if the two proceedings are 'substantially
23          similar.'" Nakash v. Marciano, 882 F.2d 1411, 1416 (9th
            Cir.1989) (citations omitted).

24
25          But because "[g]enerally, as between state and
            federal courts [with concurrent jurisdiction], the
26          rule is that the pendency of an action in the state court is
            no bar to proceedings concerning the same matter in the
27          Federal court having jurisdiction[,]" the Colorado River
            doctrine is a narrow exception to "the virtually
28          unflagging obligation of the federal courts to exercise
            the jurisdiction given them." Colorado River, 424 U.S. at

11 - FINDINGS & RECOMMENDATION

1   817, 96 S. Ct. 1236 (internal citation and quotation
2   marks omitted); accord Intel, 12 F.3d at 912.  In Moses
    H. Cone Memorial Hospital v. Mercury Construction Corp.,
3   460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983), the
    Supreme Court clarified that to fit into this narrow
4   doctrine, "exceptional circumstances" must be present.
    450 U.S. at 15-16, 101 S. Ct. 836; see also Colorado
5   River, 424 U.S. at 818, 96 S. Ct. 1236 ("Given [the
    federal court's obligation to exercise jurisdiction], and
6   the absence of weightier considerations of constitutional
    adjudication   and   state-federal   relations,   the
7   circumstances permitting the dismissal of a federal suit
    due to the presence of a concurrent state proceeding for
8   reasons of wise judicial administration are considerably
    more limited than the circumstances appropriate for
9   abstention.   The   former   circumstances,   though
    exceptional, do nevertheless exist.").

10  Holder v. Holder, 305 F.3d 854, 868-69 (9th Cir. 2002).

11      Additionally,

12      When a district court decides to dismiss or stay under
        Colorado River, it presumably concludes that the parallel
13      state-court litigation will be an adequate vehicle for
        the complete and prompt resolution of the issues between
14      the parties.  If there is any substantial doubt as to
        this, it would be a serious abuse of discretion to grant
15      the stay or dismissal at all. . . . Thus, the decision to
        invoke Colorado River necessarily contemplates that the
16      federal court will have nothing further to do in
        resolving any substantive part of the case, whether it
17      stays or dismisses.

18  Intel, 12 F.3d at 913 (internal quotation omitted).

19      Several factors are relevant to the Colorado River

20  determination.  First, however, is the dispositive factor of

21  whether the state court judgment will resolve all of the issues

22  before the federal court.  Holder, 305 F.3d at 870; Intel, 12 F.3d

23  at 913.  The remaining non-exclusive factors are:

24      (1) whether the state court first assumed jurisdiction over

25  property;

26      (2) inconvenience of the federal forum;

27      (3) the desirability of avoiding piecemeal litigation;

28      (4) the order in which jurisdiction was obtained by the

12 - FINDINGS & RECOMMENDATION

1  concurrent forums;

2      (5) whether federal law or state law provides the rule of
3  decision on the merits;

4      (6) whether the state court proceedings are inadequate to
5  protect the federal litigant's rights; and

6      (7) whether exercising jurisdiction would promote forum
7  shopping.  Holder, 305 F.3d at 870.

8      "The factors relevant to a given case are subjected to a
9  flexible balancing test, in which one factor may be accorded
10 substantially  more  weight  than  another  depending  on  the
11 circumstances of the case, and with the balance heavily weighted in
12 favor of the exercise of jurisdiction."  Id. at 870-71 (internal
13 quotation omitted).

14     The  resolution  of  this  particular  motion  turns  on  the
15 dispositive factor.  First, as noted previously, neither of the
16 plaintiffs in this case is a plaintiff in Rivera or Belknap.  Thus,
17 unless one or both of those cases is certified as a class action,
18 a judgment in either of those cases will not resolve the claims
19 brought by these plaintiffs in the instant case.

20     Second, the rounding claim in Rivera is brought under state
21 law.  It was undisputed at oral argument that while a plaintiff may
22 not recover the actual unpaid wages more than once (e.g. recovery
23 of the wages themselves would be under either state or federal law
24 with no double recovery), the penalties imposed for the non-payment
25 of any overtime or minimum wages owing are different under the two
26 statutes.  Thus, even if the plaintiffs in this case became members
27 of  a  class  action  that  is  ultimately  certified  in  Rivera,  a
28 judgment in Rivera would not resolve all of the issues pending in

13 - FINDINGS & RECOMMENDATION

1  this case.

2      Furthermore, in examining the remaining factors, even though

3  the similar claims were filed first in state court, the federal

4  forum is not inconvenient, neither federal nor state law is

5  controlling as to the rounding claims, given the different

6  plaintiffs, the litigation is not particularly "piecemeal," and, as

7  noted, the state court litigation does not completely protect

8  plaintiffs' rights, at least as far as the penalties are

9  concerned.

10      Finally, while defendant suggests that forum shopping

11 motivated plaintiff to file the instant case after dismissing a

12 similar case in state court, I decline to make any findings

13 regarding this accusation on the present record.  Any such finding

14 would not outweigh the other factors discussed above.  Accordingly,

15 I recommend that defendant's <u>Colorado River</u> dismissal/abstention

16 motion be denied.

17      E.  Dismissal of Doe Defendants

18      As indicated above, plaintiffs bring this case against US Bank

19 National Association and its affiliates and subsidiaries and Does

20 1-25.  Defendant argues that the defendants "Affiliates and

21 Subsidiaries, Does 1-25" should be dismissed because plaintiffs

22 fail to state any claim against them.  Plaintiffs' claims contain

23 no allegation that either named plaintiff worked for any "affiliate

24 or subsidiary" of US Bank National Association.  Thus, defendant

25 argues, plaintiffs have failed to plead any facts or allegations

26 demonstrating that they are entitled to relief as against the "Doe"

27 defendants.

28      Defendant also argues that the "Doe" defendants should be

14 - FINDINGS & RECOMMENDATION

1  dismissed because plaintiffs fail to plead that they made any
2  effort to ascertain the "Doe" defendants' true identities.
3  Defendant suggests that the use of a Doe or fictitiously named
4  defendant is permissible only if the complaint alleges why the
5  defendant's real name was not then known or ascertainable.

6      In response, plaintiffs state that they concede this motion
7  and are willing to replead the "Does" section to include additional
8  information regarding who the "Does" are and why they are included.
9  They explain that they included defendants under the "Does" title
10 because they believe defendant has operated, or is associated with,
11 multiple corporations which are similarly situated to US Bank
12 National Association.

13     Given plaintiffs' concession of the motion, I grant the
14 motion.  While plaintiffs may now have some idea of the names of
15 additional defendants to substitute in place of the "Does,"
16 plaintiffs still do not know if any of them engaged in any wrongful
17 conduct.  Furthermore, it appears that neither of the named
18 plaintiffs worked for any entity other than the named US Bank
19 National Association.  Given my recommendation to deny plaintiffs'
20 notice motion, it makes sense to dismiss the Doe defendants at this
21 point.  Plaintiffs can file an amended complaint at a later time if
22 they learn of facts supporting a good faith basis to allege a claim
23 against a named subsidiary or affiliate.

24     F.  Paragraph 29a

25     Paragraph 29a of the Complaint states that:  "[a]t least one
26 of the named Plaintiffs is a member of each collective claim."
27 Compl. at ¶ 29a.  Defendant moves to make this paragraph more
28 definite and certain under Federal Rule of Civil Procedure 12(e)

15 - FINDINGS & RECOMMENDATION

1   because it fails to indicate which named plaintiff is a member of

2   which collective action claim.  Plaintiff concedes this motion and

3   has agreed to amend the paragraph.  Based on plaintiffs'

4   concession, I recommend that the motion be granted.

5        G.  Paragraph 22

6        Defendant moves to strike paragraph 22 of the Complaint which

7   provides that "[a]t all relevant times, and within the preceding 6

8   years, US BANK allowed, suffered and permitted Plaintiffs and other

9   employees to perform work for which they were not compensated."

10  Id. at ¶ 22.  Defendant notes that the statute of limitations is

11  two years, or three years for willful violations, making anything

12  more than three years irrelevant.  Plaintiffs concede this error

13  and state they will replead the paragraph to limit it to the

14  relevant three-year period.  I recommend that the motion be

15  granted.

16       H.  Prejudgment Interest

17       Defendant moves to strike plaintiffs' claim for prejudgment

18  interest because, defendant contends, plaintiffs are not entitled

19  to prejudgment interest.  Ninth Circuit law suggests that if

20  plaintiffs prevail on their allegation that defendant acted

21  willfully and thus obtain liquidated damages, plaintiffs cannot

22  also recover prejudgment interest.  Brock v. Shirk, 833 F.2d 1326,

23  1331 n.3 (9th Cir. 1987) (rejecting prejudgment interest where

24  liquidated damages were awarded because "[o]nly one such 'make

25  whole' remedy is proper"), vacated on other grounds, 488 U.S. 806

26  (1988).

27       But, the law also provides that in the absence of a liquidated

28  damages award, prejudgment interest is necessary to fully

16 - FINDINGS & RECOMMENDATION

1    compensate employees for tho losses they have suffered.   Ford v.
2    Alfaro, 785 F.2d 835, 842 (9th Cir. 1986) (noting that it would be
3    an abuse of discretion not to include prejudgment interest in
4    backpay awards under the FLSA).

5        Based on these precedents, it would seem reasonable to grant
6    defendant's motion to the extent that plaintiffs should replead the
7    prejudgment interest claim as an alternative remedy to their claim
8    for liquidated damages.   This is especially so given that
9    plaintiffs will be submitting an amended complaint in any event.

10       However, at oral argument, plaintiffs contended that the law
11   is not clearly established that prejudgment interest and liquidated
12   damages remedies are exclusive of each other in an FLSA case.  They
13   requested the opportunity to make a legal argument, at a later
14   stage in the case, in support of their position that they are
15   entitled to both remedies.   Given that the prejudgment interest
16   claim along with the liquidated damages claim, as they are
17   presently pleaded, do not prejudice defendant, and given
18   plaintiffs' request to brief this issue in-depth at a later date,
19   I recommend that this motion be denied at this point.  The issue
20   should be addressed later through motion or in the pretrial order.

21       In summary, as to defendant's Rule 12 motions, I recommend
22   that (1) the motion to dismiss for failure to state a claim
23   directed at the rounding claims be denied; (2) the motion to
24   dismiss the late pay/termination claim be denied in part and
25   granted to the extent that it is directed to claims based on non-
26   Oregon statutes; (3) the motion to dismiss or abstain the rounding
27   and late pay/termination claims based on Colorado River be denied;
28   (4) the motion dismissing the Doe defendants be granted; (5) the

17 - FINDINGS & RECOMMENDATION

1 motion to make paragraph 29a more definite and certain be granted;

2 (6) the motion to strike paragraph 22 be granted; and (7) the

3 motion to strike the prejudgment interest claim be denied.

4 II.   Plaintiffs' Notice Motion

5      A.   Standards for Collective Actions

6      The FLSA provides, in pertinent part:

> Any employer who violates the provisions of section 206
> or section 207 of this title shall be liable to the
> employee or employees affected in the amount of their
> unpaid minimum wages, or their unpaid overtime
> compensation, as the case may be, and in an additional
> equal amount as liquidated damages. Any employer who
> violates the provisions of section 215(a)(3) of this
> title shall be liable for such legal or equitable relief
> as may be appropriate to effectuate the purposes of
> section 215(a)(3) of this title, including without
> limitation employment, reinstatement, promotion, and the
> payment of wages lost and an additional equal amount as
> liquidated damages. <u>An action to recover the liability
> prescribed in either of the preceding sentences may be
> maintained against any employer (including a public
> agency) in any Federal or State court of competent
> jurisdiction by any one or more employees for and in
> behalf of himself or themselves and other employees
> similarly situated. No employee shall be a party
> plaintiff to any such action unless he gives his consent
> in writing to become such a party and such consent is
> filed in the court in which such action is brought.</u>

29 U.S.C. § 216(b) (emphasis added).

     As noted by the Ninth Circuit, the "FLSA authorizes an

employee to bring an action on behalf of similarly situated

employees, but requires that each employee opt-in to the suit by

filing a consent to sue with the district court. <u>See</u> 29 U.S.C. §

216(b)."[1]  <u>Does I Thru XXIII v. Advanced Textile Corp.</u>, 214 F.3d

1058, 1064 (9th Cir. 2000).  "To facilitate this process, a

_____

     [1]  Unlike class actions certified under Federal Rule of
Civil Procedure 23, an individual may become a party plaintiff in
an FLSA collective action only if he or she files a "consent in
writing," i.e., "opts-in." 29 U.S.C. § 216(b).

18 - FINDINGS & RECOMMENDATION

district court may authorize the named plaintiffs in an FLSA collective action to send notice to all potential plaintiffs, <u>see Hoffmann-La Roche Inc. v. Sperling</u>, 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989), and may set a deadline for plaintiffs to join the suit by filing consents to sue, <u>id.</u> at 172, 110 S.Ct. 482." <u>Id.</u> Thus, here, plaintiffs file this "<u>Hoffman-LaRoche</u>" motion to authorize notice to be sent to all potential plaintiffs.

"In determining whether or not to certify a collective action, the core inquiry is whether the putative class members are 'similarly situated.'" <u>Sheffield v. Orius Corp.</u>, 211 F.R.D. 411, 413 (D. Or. 2002). As further explained in <u>Sheffield</u>:

> This court considers the term 'similarly situated' in light of the purposes and goals of a collective action. The Supreme Court has recognized that class actions can be an efficient mechanism for resolving a number of disputes in one consolidated action.  <u>See Hoffman-La Roche</u>, 493 U.S. at 170, 110 S. Ct. 482; <u>see also Daggett [v. Blind Enterprises of Or.]</u>, 1996 U.S. Dist. LEXIS 22465, at *17 [D. Or. 1996].  However, an action dominated by issues particular to individual plaintiffs can not be administered efficiently because individual issues predominate over collective concerns.
>     Putative class members must share more than a common allegation that they were denied overtime or paid below the minimum wage.  The class members must put forth a common legal theory upon which each member is entitled to relief.

<u>Sheffield</u>, 211 F.R.D. at 413.

The 'similarly situated' standard is less stringent than the requirement under Rule 23(b)(3) that common questions of law or fact predominate over questions affecting only individual members. <u>Ballaris v. Wacker Siltronic Corp.</u>, No. 00-1627-KI, 2001 WL 1335809, at *2 (D. Or. Aug. 24, 2001).  In fact, the Eleventh Circuit has held that the similarly situated requirement is more

19 - FINDINGS & RECOMMENDATION

1  flexible than the requirements of Rule 20 (joinder) and Rule 42

2  (severance). Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th

3  Cir. 1996).

4      Nonetheless, plaintiffs are required to show through

5  admissible evidence a "reasonable basis" for their claim that the

6  employer acted on a class-wide basis. Hargrove v. Sykes

7  Enterprises, Inc., No. CV-00-11-HA, 1999 WL 1279651, at *3 (D. Or.

8  June 30, 1999). Plaintiffs' claims "must contain questions of both

9  law and fact which are common to all employees engaged in the same

10  character of work." Id. (internal quotation omitted). The burden

11  is on plaintiffs to show they are similarly situated. Id.

12  Unsupported allegations of widespread violations are insufficient.

13  Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941, 945 (W.D.

14  Ark. 2003).

15      B. Discussion

16      Plaintiffs seek certification of a collective action under

17  section 216(b). Compl. at ¶ 23. They allege that they bring these

18      claims on their own behalf and on behalf of all employees
       who, in the three years prior to the filing of the
19      complaint, worked weeks without receiving compensation
       equal to the minimum wage for all hours worked and/or
20      worked hours in excess of 40 hours per week and who were
       not compensated 1½ times their regular hourly rate, and
21      who have filed or will file in this Court consent to
       being a party Plaintiffs [sic]. (Hereafter "FLSA
22      classes").

23  Id. at ¶ 23. They further allege that they are similarly situated

24  to members of the FLSA classes and that US Bank acted in accordance

25  with a uniform policy in performing the acts alleged to violate the

26  FLSA. Id. at ¶ 24.

27      Plaintiffs contend that common questions of fact and law exist

28  as to all FLSA collective action members and predominate over any

20 - FINDINGS & RECOMMENDATION

questions that affect only individual members. Id. at ¶ 28. They contend that the conduct at issue affected all current and former hourly employees and all current and former SSMs who work or have worked for US Bank in the United States. Id. They allege that the common questions include, but are not limited to:

(1) whether plaintiffs and FLSA collective action members are subject to the FLSA;

(2) whether US Bank had a policy of reducing the recorded hours worked by systematically rounding all time entries downward;

(3) whether US Bank suffered and permitted all Rounding OT FLSA members to perform work for more than 40 hours in a single week without compensating the employee at 1½ times their regular hourly rate for those hours worked;

(4) whether US Bank suffered and permitted Rounding MW FLSA members to perform work, for which it failed to pay all minimum wages due;

(5) whether SSMs worked hours in excess of 40 hours per week;

(6) whether US Bank paid SSMs at a rate of 1½ times their regular hourly rate for all hours worked over 40 hours per week;

(7) whether US Bank was required under the FLSA to pay all SSMs 1½ times their regular hourly rate for all hours worked in excess of 40 hours per week;

(8) whether SSMs fit into any exemptions under the FLSA from overtime requirements;

(9) whether US Bank failed to pay plaintiffs and similarly situated collective action members all wages after termination of their employment as required by their corresponding state wage and hour laws; and

21 - FINDINGS & RECOMMENDATION

1    (10) which remedies are available for the alleged violations.
2    Id. at ¶¶ 31(a), (b).

3    In their reply brief, plaintiffs state that they do not seek
4    to notice the putative SSM plaintiffs at this time and that they do
5    not seek to separately notice the late pay/termination plaintiffs.
6    Rather, they have narrowed their motion to notice of the Rounding
7    OT Class and the Rounding MW Class.  Thus, paragraphs (5) - (8)
8    above are not considered here.

9    In support of notice to the rounding claims classes,
10   plaintiffs rely on McElmurry's declaration in which she states that
11   while working as a "vault manager," she was paid an hourly wage and
12   her work time was tracked on a "weekly time report."  McElmurry
13   Declr. at ¶¶ 4, 5.  Each time report covers a one-week period.
14   Attached as Exhibit 1 to her declaration is a copy of the "weekly
15   time report" she used.  Id. at ¶ 5.  The report contains a
16   conversion chart instructing the employee how to convert minutes
17   worked to tenths of an hour.  Id. at ¶ 6.  McElmurry contends that
18   under this chart, all rounding was done in favor of US Bank.  Id.
19   at ¶ 7.  She cites the workweek ending July 18, 2003, as an example
20   of a week for which she was not paid for all of her time worked
21   because of the rounding policy.  Id. at ¶ 8.  She contends this
22   resulted in unpaid wages and unpaid overtime wages.  Id.

23   Plaintiffs also rely on the declaration of non-plaintiff
24   Nathan Bailey who states that he was an hourly employee and
25   submitted weekly time reports.  Bailey Declr. at ¶¶ 1, 2.  He also
26   contends that the conversion chart requires that all rounding be
27   done in favor of US Bank.  Id. at ¶ 4.  He contends that in the
28   week ending April 25, 2002, the rounding policy resulted in him not

1   being paid all of his wages.  Id. at ¶ 5.  He further contends that
2   the policy caused defendant to fail to pay him the then prevailing
3   minimum wage for all time worked as required by Washington wage and
4   hour laws and the FLSA.  Id. at ¶ 7.

5        Plaintiffs submit copies of weekly time reports of forty-
6   eight[2] separate employees which show, according to plaintiffs, that
7   defendant's rounding policy resulted in a failure to pay overtime
8   wages.  Exh. 1 to Shuck Affid.  Plaintiffs state that these
9   examples are current and past employees who worked for US Bank at
10  ten separate locations in Oregon during a six-month period.  They
11  were produced by defendant in the Rivera case.  Plaintiffs
12  estimate, based on forty-nine employees (including the duplicate
13  record), at ten locations, and based on the representation that
14  defendant has 1,190 locations in the United States, that no less
15  than 5,831 current and former employees have similar rounding
16  claims to the named plaintiffs.

17       In their reply memorandum, plaintiffs set forth a definition
18  of the class to be noticed as:

19           All non-exempt employees who work or worked for US Bank
             National Association who within the three year period
20           prior to the filing of plaintiffs' complaint, and
             recorded the hours they worked on a weekly time report
21           which contains the rounding chart identical to those
             submitted by plaintiff McElmurry.
22
23  Pltfs' Reply Mem. at p. 12.

24       Plaintiffs argue that the allegations in the Complaint and in
25  their supporting affidavits show that there was a uniform company-

26  _____

27       [2]  Plaintiffs indicate that the reports are of forty-nine
    separate employees, but in reply, plaintiffs do not dispute
28  defendant's assertion that one of the forty-nine is a duplicate.

1  wide policy that violates the FLSA.  They contend that plaintiffs

2  and all the employees who choose to opt-in were all affected by the

3  same rounding policy.  Thus, they argue that their claims should be

4  certified pursuant to section 216(b) as a collective action and

5  notice should be sent to all opt-in plaintiffs.

6     Defendant raises a host of arguments in opposition.  Defendant

7  contends that plaintiff's motion is premature, is unsupported by

8  adequate proof, that plaintiffs are not similarly situated, and

9  that plaintiffs have not sufficiently specified the purported class

10 to receive notice.  Because I agree with defendant that plaintiffs

11 have not met their burden to show they are similarly situated, I

12 decline to address defendant's other arguments.

13    Defendant maintains a policy of requiring employees to round

14 their time to the nearest tenth of an hour.  Marcia Kakiuchi Declr.

15 at ¶¶ 10, 16 and Exhs. 1-3 to Kakiuchi Declr.  While plaintiffs

16 have narrowed their notice request to only those putative class

17 members who used the particular time sheet attached to McElmurry's

18 declaration, it is undisputed that there were at least four

19 different weekly time reports in use during the relevant time

20 period.  These versions have been available on-line to employees

21 since 2001.  Defendant does not know when each of the various forms

22 was actually put on-line or off-line.  Moreover, sometimes

23 employees printed a particular version and continued to use it by

24 making photocopies of it, even after defendant had replaced it with

25 a different version, in contravention of defendant's instruction to

26 use the current version.

27    Employees in approximately twenty states used these various

28 weekly time reports.  In approximately fifteen states, employees

24 - FINDINGS & RECOMMENDATION

used a different system which did not involve filling out a weekly time report.  However, defendant represented at oral argument that some or all of the employees in those states are now using weekly time reports, although defendant did not specify which form of time report these employees are using.

The different versions of the weekly time reports have different "tenths" conversion charts.  The one attached to McElmurry's declaration and to which plaintiffs narrow their notice request, has a place for the employee to record the employee's work start time, time out for lunch, time back in from lunch, and work end time.  Exh. 1 to McElmurry Declr.  It also provides for a daily total of hours worked, to be recorded in tenths.  Id.  The form instructs that "[e]mployees should record their In and Out times above.  Time should be rounded to the nearest tenth of an hour." Id.  The conversion chart provides that 0-5 minutes are recorded as "0"; 6-11 minutes are recorded as "0.1"; 12-17 minutes are recorded as "0.2"; 18-23 minutes are recorded as "0.3"; 24-29 minutes are recorded as "0.4"; 30-35 minutes are recorded as "0.5"; 36-41 minutes are recorded as "0.6"; 42-47 minutes are recorded as "0.7"; 48-53 minutes are recorded as "0.8"; and 54-59 minutes are recorded as "0.9."  Id.  If an employee follows these instructions and records their in and out time accurately, they round their time down to their detriment.

Another version of the weekly time report includes the same message about recording in and out times and rounding to the nearest tenth, but it contains no conversion chart.  Exh. 1 to Kakiuchi Declr. at p. 1.  Two others lack the "in and out time and rounding to the nearest tenth" message, but have conversion charts.

25 - FINDINGS & RECOMMENDATION

Id. at pp. 2, 3.  On one, the conversion chart is the same as the one in the weekly time report attached to McElmurry's declaration. Id. at p. 3.  The other, however, has a different conversion chart which provides:  1-6 minutes are recorded as "0.1"; 7-12 minutes are recorded as "0.2"; 13-18 minutes are recorded as "0.3"; 19-24 minutes are recorded as "0.4"; 25-30 minutes are recorded as "0.5"; 31-36 minutes are recorded as "0.6"; 37-42 minutes are recorded as "0.7"; 43-48 minutes are recorded as "0.8"; 49-54 minutes are recorded as "0.9"; and 55-59 minutes are recorded as "1.0."  Exh. 1 at p. 2.  This one also lacks the instruction in the "Daily Totals" column to list hours worked in tenths.  Id.  Rather, it instructs the employee to list the daily total of hours worked in hours and minutes.  Id.  Use of this form by an employee following the instructions may result in rounding up, rounding down, or no rounding at all.

In the last example provided in this record, the daily totals column has a column for hours worked which contains an asterisk. Id. at p. 4.  The asterisk leads the employee to the "Rounding Rules" at the bottom right corner of the sheet.  There, the employee is told:  "Each day, calculate the total number of hours and minutes worked.  Round the total to the nearest tenth of an hour using this chart, and enter the rounded total above."  Id. The instruction continues:  "For example, [based on the accompanying chart], enter 7 hours and 32 minutes as 7.5 hours; enter 7 hours and 58 minutes as 8.0 hours."  Id.  The conversion chart provides:  0-2 minutes are recorded as "0"; 3-8 minutes are recorded as "0.1"; 9-14 minutes are recorded as "0.2"; 15-20 minutes are recorded as "0.3"; 21-26 minutes are recorded as "0.4";

26 - FINDINGS & RECOMMENDATION

27-32 minutes are recorded as "0.5"; 33-38 minutes are recorded as "0.6"; 39-44 minutes are recorded as "0.7"; 45-50 minutes are recorded as "0.8"; 51-56 minutes are recorded as "0.9"; and 57-59 minutes are recorded as "1.0." Id. Using this form and following the instructions could result in rounding up, rounding down, or no rounding.

As can be seen from these exhibits, employees using the weekly time report attached to McElmurry's declaration who made no adjustment to the actual time they reported to work, left for lunch, returned from lunch, and left for the day and thus, only used the conversion chart to adjust their total daily hours worked, would end up either reporting their time accurately or rounding down. As defendant notes, however, given the instruction that employees are to record their in and out times and round time to the nearest tenth of an hour, some employees may employ the conversion chart not just to convert the daily total of hours worked, but also to the beginning, lunch out, lunch in, and work ending times. Thus, contrary to plaintiffs' contention that this particular weekly time report always results in a rounding down of an employee's time, it is clear that first, the employee's time could be straightforward and accurately reported with no rounding[3], and second, an employee could interpret the chart as requiring rounding of the start, lunch, and ending times and thus, could end

---

[3] For example, an employee who begins at 8:00 a.m., has lunch from 11:00 a.m. to 12:00 p.m. and ends at 5:00 p.m. would have worked eight total hours. The conversion chart would have the employee record this as 8.0 hours, an accurate report with no rounding up or down.

27 - FINDINGS & RECOMMENDATION

up rounding up[4].  I note this could result in rounding down for start, lunch, and ending times as well.

The other weekly time reports do not necessarily result in a consistent rounding down.  In one, an employee working thirteen minutes gets to round up to 0.3 and one working fifty-five minutes gets to round up to 1.0.  Exh. 1 to Kakiuchi Declr. at p. 2.  In another, an employee working three minutes gets to round up to 0.1 and another working fifty-seven minutes gets to round up to 1.0.  Id. at p. 4.  In yet another, while employees are told to round to the nearest tenth of an hour, no conversion chart is provided, thus presumably leaving the conversion up to the employee's interpretation and judgment.  Id. at p. 1.

Plaintiffs provide ample evidence that rounding down does occur using the weekly time report attached to McElmurry's

_____

[4] For example, as defendant notes, an employee who reports to work at 8:05 a.m. could rely on the conversion chart showing that 0-5 minutes are to be recorded as "0," to record the start time as 8:00 a.m., thus rounding "up."

Plaintiffs contend that employees using this weekly time report do not round their start, lunch, and ending times, but rather use the conversion chart to round only the daily total hours worked.  Accordingly, following plaintiffs' contention, rounding is always done downward in the bank's favor.

Plaintiffs' position is unavailing for two reasons.  First, as demonstrated in the previous footnote, many employees' time will be accurately reported with no rounding at all.  Second, plaintiffs ignore the express instruction, set off in a box, which tells employees to record their in and out times and round to the nearest tenth of an hour.  While these are two separate sentences, the rounding instruction immediately follows the instruction to record in and out times and the instructions appear as the only instructions inside a box set off from any other instructions.  While plaintiffs may have interpreted this instruction as applying only to the daily total hours worked, other employees may have reasonably interpreted the instruction differently.

28 - FINDINGS & RECOMMENDATION

declaration.  The evidence in the record, however, does not support
plaintiffs' contention that that particular time report always
results in the rounding down of an employee's time worked.  In
addition to the examples given above, defendant provides evidence
showing that of the forty-eight rounding down instances submitted
by plaintiff, nine were either not rounded at all or were rounded
up.  Harumi Yamamoto Declr. at ¶ 2.  And, twenty-three of the
forty-eight who were underpaid one week were overpaid in other
weeks.  Id. at ¶ 6; Sandy Forrest Declr. at ¶ 1; Exh. 1 to Forrest
Declr.

A rounding policy or practice that consistently resulted a
rounding down of hours would likely violate the FLSA.  But, the
regulations clearly provide that rounding is not a per se violation
of the law:

> this practice [referring to recording employees' starting
> and stopping time to the nearest five minutes, 1/10 of an
> hour, or quarter hour] of computing working time will be
> accepted provided that it is used in such a manner that
> it will not result, over a period of time, in failure to
> compensate the employees properly for all the time they
> have actually worked.

29 C.F.R. 785.48(b).  I have found no case indicating what "period
of time" is to be considered in determining whether a rounding
policy violates this regulation.  In the only federal or state case
I found interpreting this regulation, it is unclear how long the
"period of time" at issue was.

In East v. Bullock's, Inc., 34 F. Supp. 2d 1176 (D. Ariz.
1998), the plaintiff had worked for the defendant just over three
and one-half years, at least sixteen months of which she was paid
by the hour.  Id. at 1178.  In addition to her other claims, she
brought a claim under Arizona state law for failure to pay for all

29 - FINDINGS & RECOMMENDATION

1  hours worked.  Id. at 1183.  She cited twenty-eight examples of

2  occasions when she was paid for less than the full time she worked.

3  Id. at 1184.

4      The court noted that "[d]uring the same time period in which

5  Plaintiff was 'underpaid,' her payroll records show[] that she was

6  also 'overpaid.'"  Id.   Thus, the evidence showed that the

7  defendant's "rounding system may not credit employees for all the

8  time actually worked, but it also credits employees for time not

9  actually worked."  Id.  Thus, the court found that the defendant's

10 rounding practices "averaged out sufficiently to comply with §

11 785.48(b)."  Id.

12     What the court failed to explain was the time period in which

13 the alleged twenty-eight underpayments occurred.  It is unclear

14 from the opinion whether the sixteen months during which she was an

15 hourly employee was the relevant time period, or whether something

16 less than that comprised the "period of time" at issue.  It is also

17 unclear how often she was paid.

18     While I find no guidance in the case law, it seems reasonable

19 to assume that for employees paid weekly, a period of at least

20 several weeks, if not months, is appropriate.  A lesser period

21 would be incapable of producing the averaging of wages contemplated

22 by the regulation.

23     Here, plaintiffs contend that they suffered a loss of overtime

24 or minimum wages by using the weekly time report attached to

25 McElmurry's declaration.  To be similarly situated to plaintiffs,

26 members of the putative class must also have suffered a similar

27 loss.  The problem with plaintiffs' argument that the rounding

28 claims are suitable for collective action, is that to determine if

30 - FINDINGS & RECOMMENDATION

1  a  putative  plaintiff  is  similarly  situated  requires  a  very
2  individualized inquiry and a review of thousands, if not tens of
3  thousands, of individual time sheets.

4       As noted above, while a collective action is an "efficient
5  mechanism" for resolving a number of similar disputes based on a
6  common practice, "an action dominated by issues particular to
7  individual plaintiffs can not be administered efficiently because
8  individual  issues  predominate  over  collective  concerns."
9  Sheffield, 211 F.R.D. at 413.

10      Here, for a putative class member to be similarly situated to
11 plaintiffs, meaning that the employee actually lost overtime or
12 minimum wages as a result of using the particular weekly time
13 report attached to McElmurry's declaration, the employee would need
14 to be a non-exempt hourly employee who used the weekly time report
15 at issue here, whose hours required rounding (in one or both of two
16 ways) as opposed to straightforward reporting, whose interpretation
17 of the conversion chart led them to round down, whose rounding down
18 occurred  consistently  as  opposed  to  sporadically,  and  who
19 exclusively used the chart in this fashion over a "period of time"
20 of at least weeks or months and did not use a different version of
21 the weekly time report during the relevant "period of time."

22      This list of conditions shows that determining the putative
23 class requires an exceptionally individualized inquiry.  As in
24 Sheffield, the evidence demonstrates that "each claim would require
25 extensive consideration of individualized issues of liability and
26 . . . [any collective action would be] mired in particularized
27 determinations  of  liability  .  .  .  rather  than  collective
28 consideration of common questions of law and fact."  Id.; see also

31 - FINDINGS & RECOMMENDATION

1  <u>Pfohl v. Farmers Ins. Group</u>, No. CV03-3080 DT (RCX), 2004 WL

2  554834, at *7-10 (C.D. Cal. Mar. 1, 2004) (denying plaintiffs'

3  motion for collective action certification under the FLSA when

4  certain status of employees needed to be determined on an employee-

5  by-employee basis).

6      While the burden at the initial stage of the conditional

7  collective action certification process under the FLSA is not

8  heavy, and plaintiffs do not need to make a showing of success on

9  the merits of their claims (and I undertake no consideration of the

10 merits at this time), plaintiffs nonetheless are obligated to show

11 that they are similarly situated to the putative class.  Here,

12 plaintiffs have shown that the common facts between them and the

13 putative class are limited to being non-exempt employees who used

14 the challenged time sheet at some point during the relevant statute

15 of limitations time period.  But, as explained above, those common

16 facts, by themselves, are insufficient to show that any given

17 member of the putative class was harmed by the rounding policy as

18 plaintiffs claim they were.

19     Plaintiffs fail to show a single course of action binding the

20 putative class together.  Rather, the similarly situated

21 determination in terms of actual wage loss requires individual

22 employee-by-employee, time sheet-by-time sheet inquiries which are

23 inconsistent with a collective action's goal of promoting judicial

24 efficiency.  Accordingly, I recommend that plaintiff's motion for

25 notice be denied.[5]  Furthermore, given my recommendation, I

26

27     [5] I note that given the limitation of the notice request in
   plaintiffs' reply memorandum to the rounding class, I have not
28 discussed the arguments relevant to the SSM claim or the late

recommend that plaintiff's request that the statute of limitations be tolled during the notice period, also be denied.

III.    Defendant's Motions to Strike

Defendant moves to strike portions of the declarations filed by McElmurry, Gustafson, Bailey, Schuck, and Halliday, all filed by plaintiffs in support of their notice motion.  Defendant also moves to strike Exhibit 1 to Schuck's declaration.

I deny the motions to strike as moot because even considering the challenged portions of the declarations and the challenged exhibit, I recommend that plaintiffs' motion for notice be denied. There is no need to consider the merits of defendant's arguments.

CONCLUSION

I recommend that defendant's Rule 12 motions (#13) be granted in part and denied in part and that plaintiffs' motion for notice (#4) be denied.  I further recommend that defendant's motions to strike (#18, #40) be denied as moot.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due August 11, 2004.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

/ / /

/ / /

/ / /

---

pay/termination claim.  However, I note that my initial review of the arguments and the evidence leads me to believe that plaintiffs would encounter similar "individualized inquiry" problems in regard to the "similarly situated" requirement as to those putative class members.

33 - FINDINGS & RECOMMENDATION

1    If objections are filed, a response to the objections is due

2  August 25, 2004, and the review of the Findings and Recommendation

3  will go under advisement on that date.

4    IT IS SO ORDERED.

5

6                    Dated this  27th  day of  July        , 2004.

7

8

9                             /s/ Dennis James Hubel
                              Dennis James Hubel
10                            United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

34 - FINDINGS & RECOMMENDATION