IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| KERI MCELMURRY AND KAREN MRAZEK INDIVIDUALLY, and on Behalf of All Similarly Situated | ) ) ) ) | |
| | ) | No.  CV-04-642-HU |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| | ) | FINDINGS & RECOMMENDATION/ |
| US BANK NATIONAL ASSOCIATION, | ) | ORDER |
| | ) | |
| Defendant. | ) | |

J. Dana Pinney
A.E. Bud Bailey
David Schuck
BAILEY, PINNEY & ASSOCIATES, LLC
916 Broadway, Suite 400
Vancouver, Washington 98660

    Attorneys for Plaintiffs

Carol J. Bernick
Christopher F. McCracken
Kevin H. Kono
DAVIS WRIGHT TREMAINE, LLP
1300 S.W. Fifth Avenue, Suite 2300
Portland, Oregon 97201

    Attorneys for Defendant

/ / /

1 - FINDINGS & RECOMMENDATION/ORDER

HUBEL, Magistrate Judge:

Plaintiffs Keri McElmurry and Karen Mrazek bring this Fair Labor Standards Act (FLSA) action on behalf of all similarly situated plaintiffs and against defendant US Bank National Association. In previous Findings & Recommendations and Orders, I have fully described the claims plaintiffs bring. E.g., McElmurry v. US Bank Nat'l Ass'n, No. CV-04-642-HU, Order at p. 2 (D. Or. Dec. 1, 2005).

Of relevance here is plaintiffs' claim that defendant misclassified sales and service managers (SSM) as exempt from overtime pay in violation of the FLSA. 29 U.S.C. § 207. Presently at issue is plaintiff's renewed motion to certify the sales and service manager claim as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b). I recommend that the motion be denied.

Additionally, defendant moves to strike several exhibits submitted by plaintiffs in support of the renewed certification motion. I grant that motion.

I denied plaintiffs' initial SSM claim certification motion in a December 1, 2005 Order. There, I explained that in my view, the relevant law for analyzing the "similarly situated" standard used to determine the appropriateness of certification as a collective action, was the "two-tiered" approach explained in Hipp v. Liberty National Life Insurance Co., 252 F.3d 1208, 1218 (11th Cir. 2001), which has been used by many district courts, including this one. Dec. 1, 2005 Ord. at pp. 14-16 (citing, inter alia, Fichtner v. American Mut. Ins. Co., No. CV-02-6284-HO, 2004 WL 3106753, at *10 (D. Or. Mar. 1, 2004)).

2 - FINDINGS & RECOMMENDATION/ORDER

1    I reviewed the differing levels of scrutiny applied under the

2    two-tiered approach and concluded that because plaintiffs had

3    engaged in substantial discovery on the SSM claim and had

4    successfully extended the discovery deadline to pursue their

5    discovery requests, and because discovery had then closed with the

6    exception of responses to two interrogatories, "the case posture is

7    much closer to the second stage inquiry than the first initial

8    stage inquiry." Id. at p. 20.    I denied the motion for

9    certification with leave to plaintiffs to renew it after obtaining

10   the discovery plaintiffs requested in Interrogatories 10 and 11.[1]

11   In a December 16, 2005 telephone conference, I ordered

12   defendant to provide the responses to Interrogatories 10 and 11 by

13   January 6, 2006.    Dec. 16, 2005 Ord. (dkt #247).    Any follow-up

14   discovery was to be completed by March 10, 2006, and any renewed

15   motion for certification by plaintiffs was to be filed by March 24,

16   2006. Id.

17   The parties were unable to agree on a discovery plan due to

18   defendant's concern that once it produced the information for the

19   terminated SSMs, plaintiffs' subsequent contact would amount to de

20   facto collective action notice which defendant viewed as

21   inconsistent with my December 1, 2005 Order.    I was unable to

22   schedule a hearing with the parties until January 12, 2006.

23   Defendant produced its responses to the interrogatories to the

24

25   [1] Interrogatory 10 sought the name, address, and phone

26   number of each SSM whose employment with defendant had terminated
     within the previous three years, and the defendant's business

27   location where the employee worked at the time of termination.
     Interrogatory 11 sought the date of termination for each SSM

28   identified in response to Interrogatory 10.

1    court in camera on January 6, 2006.

2        In a written Order issued on January 13, 2006, I ordered

3    defendant to produce the responses to Interrogatories 10 and 11 on

4    that date, and further ordered that neither plaintiffs, nor

5    defendant were to contact any of the terminated SSMs identified in

6    the interrogatory responses until the parties agreed upon a

7    discovery plan or until such time as ordered by the court. Jan.

8    13, 2006 Ord. (dkt #254).

9        The parties met in my chambers on February 2, 2006, to work on

10   a discovery plan. Aided by Judge King, they reached an agreement

11   which was memorialized in a court-issued February 2, 2006 Discovery

12   Order (dkt #259). The February 2, 2006 Discovery Order also

13   extended the date by which plaintiffs were required to file their

14   renewed collective action certification motion, to April 17, 2006.

15   On February 9, 2006, I formally lifted the portion of the January

16   13, 2006 Order prohibiting contact with the terminated SSMs

17   identified in the interrogatory responses. Min. Ord. (dkt #262).

18   I.  Initial Notice Stage/Second Stage

19       In their renewed motion, plaintiffs challenge my previous

20   conclusion that the second stage inquiry is appropriate in this

21   case. They make three arguments: (1) defendant has failed to

22   provide discovery of forms which defendant agreed to provide and

23   has only reluctantly provided, after objection and delay, the

24   responses to Interrogatories 10 and 11; (2) discovery as to

25   individual SSMs is incomplete; and (3) the initial notice stage

26   cannot be skipped in any event, regardless of how much discovery

27   has been completed.

28   / / /

4 - FINDINGS & RECOMMENDATION/ORDER

A.  Defendant's Provision of Requested Discovery

As can be seen from the recitation of facts leading up to the February 2, 2006 Discovery Order, any delay in the production of responses to Interrogatories 10 and 11 is not properly attributed to any bad faith, but instead was a product of a legitimate concern by defendant as to how plaintiffs were to make use of names of the terminated SSMs in light of the fact that the case was <u>not</u> a certified collective action. Defendant's genuine concern, combined with the court's calendar, caused a delay from January 6, 2006, to February 2, 2006, and then to February 9, 2006, when the order prohibiting contact with the SSMs was formally lifted.

Notably, this approximately one-month delay was offset by an extension of the date by which plaintiffs were ordered to file their renewed certification motion by approximately three weeks. Thus, plaintiffs can hardly claim that they were prejudiced by any delayed access to the information produced by defendant in response to the interrogatories.

Plaintiffs also complain that defendant did not provide complete responses to the interrogatories. Approximately three months after defendant produced the list of terminated SSMs to plaintiffs, plaintiffs identified one individual whom plaintiffs believed should have been on the list, but was omitted. Defendant represents that it immediately investigated the omission and discovered that because its search parameters in response to the request were former SSMs in Oregon and Washington who had left the bank's employment during a certain period of time, the parameters failed to capture the name of any employee who had been employed by the bank more than once, with the second time outside of the search

5 - FINDINGS & RECOMMENDATION/ORDER

1    parameters.

2        When plaintiffs notified defendant of the error, and defendant

3    discovered its cause, defendant reviewed the records of all SSMs

4    employed during the relevant time period. Defendant discovered one

5    other omission as a result of its efforts. Defendant then sent

6    plaintiffs' counsel a letter explaining the error and amending the

7    interrogatory response to include both names. Plaintiffs do not

8    dispute defendant's representation as to the reason for the

9    omissions or the timing of defendant's amended response. I agree

10   with defendant that there is no support for plaintiffs' allegation

11   that defendant purposefully withheld names from the initial

12   responses to Interrogatories 10 and 11.

13       One of the items addressed in the February 2, 2006 Discovery

14   Order was the provision of personnel files and forms. Item #4 of

15   the Order stated that

16           [d]efendant will provide the personnel files for anyone
             defendant deposes, or as properly requested by an
17           employee. Defendant will provide sample/actual forms
             used in the performance of the SSM's job, for one to two
18           SSMs as reasonably requested by plaintiffs.

19   Feb. 2, 2006 Discovery Order. By the plain wording of this Order,

20   the burden was on plaintiffs to initiate the request for any forms

21   it desired defendant to produce. Plaintiffs do not dispute that

22   they waited approximately two months to identify the two SSMs for

23   whom they were requesting forms. Their April 7, 2006 request

24   sought thirty different forms and requested production by April 17,

25   2006, the due date for any renewed collective action certification

26   motion. Defendant provided the forms on May 9, 2006, some thirty-

27   two days after they were requested.

28       I fail to see how plaintiffs were prejudiced by any delay in

6 - FINDINGS & RECOMMENDATION/ORDER

1  the production of the forms.  First, a large part of the blame for

2  the delay lies with plaintiffs and their failure to promptly

3  identify the SSMs for whom they wanted forms.  Second, because they

4  requested that the forms be produced by April 17, 2006, plaintiffs

5  could not have intended to rely on them in their renewed

6  certification motion and supporting memorandum because those

7  documents were due to be filed with the court on that same date.

8      Third, on April 11, 2006, plaintiffs sought another extension

9  of time to file the renewed certification motion.  Plaintiffs did

10  not cite any delay in production of forms by defendant as a basis

11  for that motion.  Rather, plaintiffs noted that they were still

12  gathering information from the SSMs.  There was no indication that

13  they were awaiting forms from defendant.

14      I granted plaintiffs' extension motion, and plaintiffs filed

15  their renewed motion on May 8, 2006.  Given that under the new

16  briefing schedule, plaintiffs' reply memorandum was not due until

17  July 6, 2006, plaintiffs had plenty of time to make use of the

18  forms in their reply memorandum.

19      The facts regarding defendant's responses to Interrogatories

20  10 and 11, the omission of any names from those responses, and the

21  production of requested forms, do not provide a basis for

22  refraining from applying the second stage "similarly situated"

23  inquiry to plaintiffs' renewed collective action certification

24  motion.  Plaintiffs received all requested discovery, including the

25  forms, with more than enough time to rely on any information

26  obtained in discovery, in briefing this motion.

27      B.  Discovery of Individual SSMs

28      Plaintiffs' next argument is that the second stage inquiry is

7 - FINDINGS & RECOMMENDATION/ORDER

1    inappropriate because even though plaintiffs concede defendant has
2    provided all the requested discovery for the named plaintiffs,
3    there has been no individual discovery for each of the potential
4    opt-in plaintiffs.  The problem with plaintiffs' argument is that
5    discovery closed on July 22, 2005.  Shortly before the closure of
6    discovery, plaintiffs moved to compel certain requested items.  I
7    held oral argument on those motions on September 6, 2005.  I
8    granted the motions in part and denied them in part and ordered
9    defendant to comply with production by September 19, 2005.

10       I also denied a motion by plaintiffs to further extend the
11   discovery deadline[2], but I indicated that if plaintiffs identified
12   any additional discovery after reviewing the items produced on or
13   before September 19, 2005, plaintiffs could file a renewed motion
14   to extend, no later than September 26, 2005.  No such motion was
15   filed.  Thus, even before the completion of the briefing on
16   plaintiffs' first motion for certification on the SSM claim in
17   October 2005, plaintiffs had received all discovery requested,
18   except for responses to Interrogatories 10 and 11.  Of course, as
19   recited above, plaintiffs have now received those responses and the
20   additional follow-up discovery agreed to in the February 2, 2006
21   Discovery Order.

22       This case is more than two years old.  The SSM claim was
23   initially filed in state court and then voluntarily dismissed
24   before being refiled in federal court.  Including the time the
25

26        [2]  I had twice previously extended the discovery deadline.
     In October 2004, I extended the original discovery deadline of
27   September 8, 2004, to April 22, 2005.  Oct. 20, 2004 Ord. (dkt
     #73).  Later, I granted a motion by plaintiffs to extend the
28   discovery deadline.  Apr. 25, 2005 Min. Ord. (dkt #101).

8 - FINDINGS & RECOMMENDATION/ORDER

1  claim was pending in state court, the claim is more than three
2  years old.

3      Plaintiffs initially moved to certify the SSM claim, as well
4  as a separate "time sheet truncation" claim, in the spring of 2004,
5  when the case was filed in this Court.  Plaintiffs dropped the
6  certification request for the SSM claim in its reply memorandum.
7  Plaintiffs conceded defendant's argument that they had not
8  proferred sufficient evidence to show that the SSMs were
9  sufficiently similarly situated.  Pltfs' Reply Mem. in Sup. of
10  First Motion for Notice at p. 9 (dkt #38).  Plaintiffs expressly
11  stated that "notice [as to  the SSM claim] should not be sent at
12  this time, and [plaintiffs] will re-file their request for notice
13  after further discovery has taken place."  Id. at pp. 9-10.

14      With the re-filing of the motion on the SSM claim on August
15  22, 2005, plaintiffs impliedly represented that they had obtained
16  sufficient discovery to sustain their motion.  Plaintiffs have had
17  plenty of time in this case to make discovery requests, during the
18  discovery period, regarding the named and putative SSMs.  Now that
19  all of the requested discovery, with additional follow-up, has been
20  obtained, there is no basis to re-open discovery for the purposes
21  of analyzing the "similarly situated" inquiry required by section
22  216(b).  Accordingly, the fact that discovery regarding the
23  potential opt-in plaintiffs has not been obtained, is not a basis
24  for refraining from performing the second stage analysis.

25      Finally, even if the instant motion were granted and
26  plaintiffs successfully argued for the re-opening of discovery as
27  to the potential opt-ins, I am skeptical that any information
28  plaintiffs could obtain from the opt-ins would bolster their

9 - FINDINGS & RECOMMENDATION/ORDER

position in this "similarly situated" analysis.  As explained in more detail below, I recommend denying this renewed motion because the individualized fact-intensive inquiry required to determine how much time each SSM spent in various exempt and non-exempt tasks, is inconsistent with the maintenance of a collective action.

Discovery from the opt-ins would likely relate to how much time each opt-in plaintiff spent at what task in his or her branch, in other words, proof of his or her individual claim. This type of information, however, is just additional evidence that the questions pertaining to the merits of the claims, are individualized.

Plaintiffs' argument that the lack of discovery from potential opt-in plaintiffs renders the second stage analysis inappropriate, should be rejected.

C.  Skipping of Initial Stage

Next, plaintiffs argue that the completion of substantial discovery does not, by itself, justify a second stage analysis. Plaintiffs cite several cases, but principally rely on Leuthold v. Destination America, Inc., 224 F.R.D. 462 (N.D. Cal. 2004).  There, the court first concluded that the two-tier analysis was appropriate.  Id. at 467.  It then proceeded to determine whether its resolution of the motion for certification should proceed under the first or second tier.  Id. at 467-68.  The court acknowledged that this was a "close question, given that extensive discovery" had taken place.  Id.  But, the court concluded that the first stage initial inquiry should be used.  Id.

The court explained that although discovery was drawing to a close, it was still in a "state of flux."  Id. at 467.  It noted

10 - FINDINGS & RECOMMENDATION/ORDER

1    that some outstanding discovery requests remained, and suggested
2    that it was not clear if a complete factual record had been
3    developed and presented. Id. The court also concluded that the
4    two-tier approach "contemplate[d] progression through the notice
5    stage before reaching the more rigorous inquiry required to
6    maintain the class." Id.

7        The Leuthold court acknowledged that other courts "sometimes
8    bypass the first stage when discovery has been completed." Id.
9    Nonetheless, the court stated, even if that were an appropriate
10   approach generally, it was not appropriate in the case before it
11   because it was unclear if the factual record was complete. Id.
12   The court also believed that without some formal solicitation of
13   class members, it was unclear how many may want to participate.
14   Id.

15       The other cases cited by plaintiffs all analyzed the
16   "similarly situated" standard under the initial first stage inquiry
17   because, the courts concluded, sufficient evidence relevant to that
18   issue had not yet been obtained. E.g., Hammon v. Lowe's Home Ctrs,
19   Inc., No. Civ. A. 02-2509-CM, 2005 WL 2122642, at *3 (D. Kan. Sept.
20   1, 2005) (in nearly three-year old case where parties had conducted
21   discovery, court proceeded to analyze certification issue under
22   initial stage because discovery, although significant, had been
23   limited to only one of defendant's stores and the evidence before
24   the court was not extensive and thus, the court determined it could
25   not conclude that the evidence was representative of what
26   plaintiffs would present with additional discovery); Kalish v. High
27   Tech. Inst., No. Civ. 04-1440 (JRT/JSM), 2005 WL 1073645, at *2 (D.
28   Minn. Apr. 22, 2005) (court proceeded under initial stage because

11 - FINDINGS & RECOMMENDATION/ORDER

even though case was almost one year old and discovery deadline was only two weeks away, discovery had been limited to only one school and no discovery had taken place with respect to the defendant's sixteen other schools, and thus, the record before the court was relatively incomplete); Williams v. Sprint/United Mgmt Co., 222 F.R.D. 483, 485 (D. Kan. 2004) (court reviewed certification motion under initial stage even though 119 individuals had opted in and parties had engaged in considerable discovery regarding the opt-ins, when parties had not engaged in discovery on the issues pertinent to second stage analysis and the defendant did not contend that the court should use the second stage standard at this juncture).

I find the cases plaintiffs cite distinguishable. As explained in my December 1, 2005 Order,

> I agree with defendant that the fact that this is plaintiffs' motion for notice/certification does not prohibit a second stage stricter scrutiny of the "similarly situated" standard if the circumstances justify it. I also agree with defendant that the history of this case, and the fact that discovery is closed with the exception of responses to two interrogatories, compels a conclusion that the motion should be resolved under the second stage inquiry, once those interrogatory responses have been provided.

Dec. 1, 2005 Order at p. 18.

What the cases make clear is that the determination of whether to apply the first or second stage inquiry is best decided on a case-by-case basis, with a consideration of how much discovery has been completed, on what issues, and whether a sufficient factual record pertinent to the "similarly situated" standard, is present. For the reasons expressed in the December 1, 2005 Order, and further due to the fact that the responses to Interrogatories 10

12 - FINDINGS & RECOMMENDATION/ORDER

1  and 11, and follow-up discovery, have been provided, I adhere to my

2  previous conclusion that this motion is appropriately decided under

3  the second stage inquiry. E.g., Pfohl V. Farmer's Ins. Group, No.

4  CV03-3080 DJ (RCX), 2004 WL 554834, at *3 (C.D. Cal. Mar. 1, 2004)

5  (analyzing plaintiffs' motion for certification under second stage

6  because discovery relating to the issues of certification had been

7  undertaken); Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1274

8  (M.D. Ala. 2004) (analyzing plaintiffs' motion for certification

9  under second stage because parties had conducted extensive

10 discovery, particularly in regard to "similarly situated issue");

11 Brooks v. Bellsouth Tel., Inc., 164 F.R.D. 561, 568-69 (N.D. Ala.

12 Sept. 29, 1995) (analyzing plaintiffs' motion under second stage

13 because plaintiff had extensive discovery regarding the class

14 allegations), aff'd, 44 F.3d 1202 (11th Cir. 1997).

15 II.  Admissible Evidence

16     In support of their renewed motion, plaintiffs submit the

17 Declaration of A.E. Bud Bailey and several exhibits attached to

18 that Declaration. Under the February 2, 2006 Discovery Order, each

19 party was to draft a questionnaire to be sent to the SSMs

20 identified in the responses to Interrogatories 10 and 11, and a

21 cover letter.  In his Declaration, Bailey states that plaintiffs

22 sent a questionnaire, with an agreed-upon cover letter, to

23 individuals identified by defendant in response to the

24 interrogatories.  Bailey Declr. at ¶ 2.  Exhibit 14 to Bailey's

25 Declaration contains copies of exemplars of the responses

26 plaintiffs received to those questionnaires.  Id. at ¶ 5.

27     Plaintiffs sent a follow-up questionnaire based on the

28 responses received to the first questionnaire.  Id. at ¶ 3.

13 - FINDINGS & RECOMMENDATION/ORDER

Exhibits 1-13 to Bailey's Declaration are copies of exemplars of responses plaintiffs received to the follow-up questionnaires. Id. at ¶ 4.    Plaintiffs used a template to redact any personal information contained in the questionnaires.    Id.

Defendant moves to strike Exhibits 1-14 because they contain inadmissable hearsay.  Defendant additionally argues that Exhibits 1-13 were obtained in violation of the February 2, 2006 Discovery Order.  Defendant further moves to strike portions of Bailey's declaration as lacking personal knowledge.

A.  Hearsay

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).  Defendant argues that Exhibits 1-14 are out of court statements, offered to prove the truth of the matter asserted, because plaintiffs rely on Exhibits 1-13 to show time purportedly spent on various tasks by SSMs, and they rely on Exhibit 14 to show that the SSMs worked more than forty hours per week without being paid overtime wages.  Defendant contends these exhibits must be excluded from consideration in support of plaintiffs' renewed motion.  I agree with defendant.

The prevailing view, one articulated in a previous decision in this case, is that plaintiffs must rely on admissible evidence to sustain their burden of proving they and the proposed FLSA class are similarly situated.  See Grayson v. K Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996) (plaintiff bears burden of proof in section 216 motion to show "similarly situated" to the proposed FLSA class); Harrison v. McDonald's Corp., 411 F. Supp. 2d 862, 865-66

14 - FINDINGS & RECOMMENDATION/ORDER

(S.D. Ohio 2005) (noting that "[c]ourts, . . ., have repeatedly held that only admissible evidence may be considered in connection with a § 216(b) motion"; holding that co-workers' hearsay statements were not admissible to show that the co-workers were similarly situated to plaintiff); Richards v. Computer Sci. Corp., No. 3-03-CV-00630(DJS), 2004 WL 2211691, at *1-2 (D. Conn. Sept. 28, 2004) (striking paragraph of plaintiff's affidavit filed in support of section 216(b) collective action motion because it was inadmissible hearsay); McElmurry v. US Bank Nat'l Ass'n, No. CV-04-642-HU, 2004 WL 1675925, at *10 (D. Or. July 27, 2004) ("[P]laintiffs are required to show through admissible evidence a 'reasonable basis' for their claim that the employer acted on a class-wide basis") (citing Hargrove v. Sykes Enterprises, Inc., No. CV-00-11-HA, 1999 WL 1279651, at *3 (D. Or. June 30, 1999)); Clark v. Dollar Gen'l Corp., No. 3:00-0729, 2001 WL 878887, at *1-2 (M.D. Tenn. May 23, 2001) (striking portions of plaintiffs' declarations filed in support of section 216(b) motion because contained inadmissible hearsay).

There is no dispute that the questionnaire responses in Exhibits 1-14 are all out of court statements. The issue is whether they are offered to prove the truth of the matter asserted. Plaintiffs contend they are not.

Plaintiffs cite Exhibits 1-13, and in one instance Exhibit 14, as support for the following statements:

(1) each named plaintiff and each putative opt-in collective action member holds or has held the position of SSM; Pltfs' Mem. in Sup. of Renewed Mtn at p. 11;

(2) each of the named plaintiffs and putative opt-ins worked

15 - FINDINGS & RECOMMENDATION/ORDER

more than 40 hours in a single workweek as SSMs for defendant; Id. at pp. 11-12 (also citing to Exh. 14);

(3) the job duties of plaintiffs and SSMs are strikingly uniform from one SSM to another; Id. at p. 12;

(4) SSMs had to regularly perform a common set of routine, regular tasks that required no specialized skills, independent judgment or discretion such as unlocking the branch door and turning off the alarm, walking the branch to check for intruders when opening, checking video surveillance tapes, opening the vault, signing onto the branch computer, opening and balancing the night chute and the ATM, opening and closing the vault throughout the day, opening the key box, closing the vault at closing, and locking doors and turning on the alarm at the end of the day; Id. at pp. 15-16;

(5) SSMs were regularly required to perform work normally performed by non-exempt employees such as vault teller duties, teller duties, and personal banker duties; Id. at pp. 16-17;

(6) SSMs printed and filed computer reports, performed checklists and audit review worksheets for various reports, did "kiting" reports, and a cashiers' check report; Id. at pp. 17-18;

(7) SSMs checked that established, routine US Bank procedures were being followed and explained how to perform US Bank procedures (citing eight procedures); Id. at p. 18;

(8) SSMs checked teller cash drawer balances; Id. at pp. 18-19;

(9) SSMs sold US Bank products to customers; Id. at p. 19;

(10) SSMs communicated directly with US Bank customers to address customer questions and complaints; Id.;

16 - FINDINGS & RECOMMENDATION/ORDER

1    (11)   SSMs greeted customers; <u>Id.</u>

2    (12)   SSMs notarized documents; <u>Id.</u>

3    (13)   SSMs read and followed up with business email; <u>Id.</u>

4    Plaintiffs argue that because the questionnaires are merely

5    examples that demonstrate the similarities between the job duties

6    of the SSMs, they are not offered for the truth of their contents.

7    They contend that the exemplars are submitted to demonstrate

8    "similarly situated," not to prove that a specific person did a

9    specific task.  They note that the questionnaire responses provide

10   statements of specific tasks and that none of them state that he or

11   she, as an SSM, is similarly situated to plaintiffs.  Plaintiffs

12   argue that "[b]ecause the exemplars do not state the 'similarly

13   situated' language, the exemplars are not being offered for what is

14   asserted.  Thus, they are not hearsay."  Pltfs' Resp. to Mtn to

15   Strike at p. 5.

16   The problem with plaintiffs' argument is that to accept the

17   questionnaire responses as a basis for finding that the SSMs are

18   similarly situated, one has to accept the content of the responses

19   as true descriptions of the respondents' job activities.  While the

20   questionnaire responses do not contain a conclusory statement by

21   the declarant such as "my job duties made me similarly situated to

22   other SSMs," plaintiffs nonetheless ask the court to accept the

23   truth of the representations listed above regarding the various

24   duties performed by the SSMs.

25   This is classic hearsay.  These are out of court statements

26   offered to prove that the SSM questionnaire respondents actually

27   engaged in the tasks and duties described.  This is exactly the

28   "truth" that plaintiffs seek to support with these exhibits - that

17 - FINDINGS & RECOMMENDATION/ORDER

these respondents engaged in these various tasks. Similarly, Exhibit 14 is offered to show that the questionnaire respondents were classified as SSMs and worked more than forty hours per week. Just like Exhibits 1-13, Exhibit 14 is offered for the truth of the matter asserted.

Plaintiffs alternatively argue that the exhibits should be admitted under Federal Rule of Evidence 807, the residual hearsay rule. I reject this argument. See Bourjaily v. United States, 483 U.S. 171, 179 (1987) (out of court statements are presumed unreliable); Fong v. American Airlines, Inc., 626 F.2d 759, 763 (9th Cir. 1980) (Rule 807 exception "is not to be used as a new and broad hearsay exception, but rather is to be used rarely and in exceptional circumstances"); Fed. R. Evid. 807 (requiring proponent of the evidence to advise the adverse party of the intent to offer the statement and the particulars of the statement, "including the name and address of the declarant.").

I grant the motion to strike Exhibits 1-14.

B.  Other Arguments

I need not address the argument that Exhibits 1-13 were obtained in violation of the February 2, 2006 Discovery Order in light of my conclusion that Exhibits 1-14 are inadmissible hearsay.

As to Bailey's Declaration, defendant does not specify which particular declarative statements it challenges. My review of the Declaration shows that much of it is simply an authentication of the attached documents. To the extent Bailey's Declaration contains a statement by Bailey regarding the contents of the responses to the questionnaires at issue, he clearly has no firsthand knowledge of such contents, and I grant the motion.

However, beyond that general statement, I decline to grant the motion without a more specific argument from defendant.

III.  Discussion of Second Stage Inquiry

This is the fourth time in this case I have analyzed a request for certification.  I have previously recited the applicable law and see no need to repeat it here.  Dec. 1, 2005 Ord. at p. 17 (analyzing plaintiffs' re-filed motion regarding SSM claim); McElmurry v. US Bank Nat'l Ass'n, No. CV-04-642-HU, 2004 WL 1675925, at *9-10 (D. Or. July 27, 2004) (analyzing plaintiffs' first motion regarding time sheet truncation claim); McElmurry v. US Bank Nat'l Ass'n, No. CV-04-642-HU, 2005 WL 2078302, at *10-11 (D. Or. July 29, 2005) (analyzing plaintiffs' renewed motion regarding time sheet truncation claim).

Notably, under the second stage inquiry, as explained in the December 1, 2005 Order, to determine if the plaintiffs are similarly situated to the proposed class, I examine the disparate factual and employment settings of the individual plaintiffs, the various defenses available to defendant which may be individual to each plaintiff, and any other fairness and procedural questions. Dec. 1, 2005 Ord. at p. 17.

To start, I reject plaintiffs' argument that the fact that defendant has classified all SSMs as exempt is sufficient to show that they are similarly situated.  Adopting plaintiffs' argument would mean that a collective action would be certified for any group of employees classified by the employer as exempt, with no further showing by the plaintiffs.  This runs counter to the cases indicating that exemption misclassification claims are particularly unsuited to collective action treatment.  See Aguirre v. SBC

19 - FINDINGS & RECOMMENDATION/ORDER

1  Comm'ns, Inc., No. Civ. A. H-05-3198, 2006 WL 964554, at *7 (S.D.

2  Tex. Apr. 11, 2006) (denying plaintiffs' certification motion in

3  overtime exemption misclassification case because determining

4  whether other potential plaintiffs are similarly situated would

5  require a fact-specific and individualized inquiry into each

6  employee's daily job duties, including the number of employees

7  supervised, ability to recommend hiring, firing, and reprimanding

8  workers, the opportunity to exercise discretion, and the amount of

9  time the employee spends on nonmanagerial tasks; court noted that

10 even employees with same job title are not similarly situated for

11 opt-in FLSA class if their day-to-day job duties vary

12 tremendously); Holt, 333 F. Supp. 2d at 1274-75 (variations in

13 evidence concerning amount of time spent running a cash register,

14 stocking shelves, making signs, etc. versus managing the retail

15 store defeated any claim that the day-to-day tasks of store

16 managers and assistant managers were sufficiently similar to

17 designate a class for the purposes of deciding if they were

18 properly designated as exempt).

19      Plaintiffs' argument also runs counter to any case that has

20 followed the two-step inquiry outlined in Hipp in the context of an

21 overtime misclassification claim. I cannot accept plaintiffs'

22 argument that "similarly situated" is demonstrated simply by the

23 employer's exempt classification because it turns every overtime

24 case into a collective action and there is no support for this

25 proposition.

26      Both plaintiffs and defendant incorporate evidentiary filings

27 made in support of plaintiffs' first certification motion regarding

28 the SSM claim, into this motion. Plaintiffs and putative opt-in

20 - FINDINGS & RECOMMENDATION/ORDER

plaintiff Sherry Gustafson[3] state that they spent not less than sixty-percent of their time completing duties the primary nature of which did not require them to exercise discretion and independent judgment.  Aug. 18, 2005 Mrazek Declr. at ¶¶ 9-11; Aug 19, 2005 McElmurry Declr. at ¶¶ 9-11; Aug. 19, 2005 Gustafson Declr. at ¶¶ 9-11.  They state that they did not set policy, and lacked authority to change any policy, procedure, or practice.  Aug. 18, 2005 Mrazel Declr. at ¶ 11; Aug 19, 2005 McElmurry Declr. at ¶ 11; Aug. 19, 2005 Gustafson Declr. at ¶ 11.

In opposition to the first motion, defendant relied on declarations from eight other SSMs, and deposition excerpts of other bank personnel, to support its contention that the way each SSM performs his or her job depends on branch location, the type of branch, and other staff assigned to that branch.  Sept. 16, 2005 Kakiuchi Declr. at ¶¶ 3-6 (describing types of branches), 8 (noting that number of employees and positions staffed varies from branch to branch), 14 (noting that given the possible variations in staffing, the actual day-to-day activities of an SSM vary branch to branch).

The evidence shows that although each SSM has the same overall job description, each SSM is used differently at each branch.  Id.; see also Sept. 14, 2005 Barnes Declr. at ¶ 6 (noting that her day-to-day job duties vary, depending on a variety of factors including the time of week and month, staffing levels, and the unpredictable

---

[3] Gustafson filed a "Consent to be a Party Plaintiff" on July 23, 2004 (dkt #49).  However, because she is not a named plaintiff and no collective action has been certified, she is properly considered only a putative opt-in plaintiff.

1  flow of customers and customer needs); Sept. 14, 2006 Davey Declr.

2  at ¶ 6 (same); Sept. 14, 2005 Waines Declr. at ¶ 8 (same); Sept.

3  14, 2005 Gludt Declr. at ¶ 8 (same); Sept. 15, 2005 Salisbury

4  Declr. at ¶ 7 (same); Sept. 13, 2005 Oliveros Declr. at ¶ 8 (same);

5  Sept. 13, 2005 Walker Declr. at ¶ 6 (same).  Thus, while the range

6  of duties that an SSM may perform appears to be similar from branch

7  to branch, the actual performance of duties, including the

8  particular duties performed and the amount of time spent performing

9  each particular duty, varies from branch to branch.

10      Plaintiffs' and Gustafson's declarations are not inconsistent

11  with the eight SSM declarations in describing the various duties

12  performed by SSMs.  Differences appear in categorizing the duties

13  as more or less ministerial or as involving more or less

14  discretion, and in the amounts of time spent on various duties.

15  Importantly, however, plaintiffs offer no evidence to contradict

16  defendant's evidence regarding how bank branches are organized and

17  the fact that SSM duties, and time spent on the range of SSM

18  duties, vary depending on the branch and other staffing.

19      Based on the evidence submitted with the first motion, the

20  amount of time an SSM performs or performed a particular duty

21  appears to be a highly individual inquiry.  Given that there could

22  be 400 or more SSMs, and given that the evidence suggests a range

23  of at least twelve to fifteen tasks, the individualized inquiries

24  into how each SSM spent or spends his or her time would predominate

25  over the collective questions directed to the ministerial or

26  managerial nature of a particular task or duty.

27      Because of my conclusion that the evidence contained in

28  Exhibits 1-14 of Bailey's Declaration submitted in support of the

22 - FINDINGS & RECOMMENDATION/ORDER

renewed motion is inadmissible hearsay, plaintiffs offer no new relevant evidence on this issue in support of their renewed motion. Thus, plaintiffs fail to submit evidence contradicting defendant's showing that of all the duties an SSM can perform, the actual duties performed by each SSM, and the amount of time each SSM spent or spends performing a particular duty, varies considerably from branch to branch, making the ultimate inquiry regarding alleged unlawful failure to pay overtime, highly individualized.

Even if I consider Exhibits 1-14, however, I would reach the same conclusion regarding the individualized nature of the inquiry. Exhibit 14 shows that the questionnaire respondents worked more than forty hours per week, were not always paid overtime for any hours over forty, did not always receive two rest breaks, and did not always receive an uninterrupted thirty-minute meal period. Exh. 14 to Bailey Declr.

Each of Exhibits 1-13 is a separate response to the second follow-up questionnaire sent by plaintiffs. If the questionnaire respondent completed the questionnaire, each response shows the usual time the SSM's day started and the usual time the SSM left work. Then, there is a list of thirty-four separate tasks, with task #9 having eight subparts accompanied by a column for the respondent to circle "yes" or "no," indicating if the SSM engaged in that task at all. There is a separate column asking the respondent to fill in the amount of time spent per week on the identified task. Exhs. 1-13 to Bailey Declr.

Assuming for the purposes of this Findings & Recommendation,

23 - FINDINGS & RECOMMENDATION/ORDER

that the list identified all possible tasks an SSM performed[4], the exhibits nonetheless fail to establish a substantial similarity among the SSMs in how much time they spent in what tasks.  First, three of the respondents offer no calculation of any time spent on various tasks.  Exhs. 3, 4, 11.  Aside from showing that the SSM engaged in certain tasks listed in the questionnaire, these exhibits reveal no similarity, or dissimilarity, in the time the SSM spent on the task.

Second, where the questionnaire respondent estimated time, the exhibits show differences in the amount of time spent performing tasks.  For example, time spent handling in-person customer complaints and problems ranged from 20 minutes to 22.5 hours per week.  Exhs 1 (22.5 hours); 2 (5 hours); 5 (4 hours); 6 (2 hours); 7 (5 hours); 8 (20 minutes); 9 ("all day"); 10 (5 hours); 12 (4 hours); and 13 ("1+ hours").

Other examples include the amount of time the respondents spent on "performing teller duties"; Exhs. 9 ("all day at different times"); 13 (30 minutes); 6, 8 (1 hour); 12 (2 hours); 2, 7, 10 (5 hours); 1 (10 hours); and 5 (15 hours); and "handling incoming customer calls."  Exhs. 9 ("most of the day"), 1 (12.5 hours), 8 (20 minutes), 13 (1 hour).

Thus, Exhibits 1-14, even if considered, support the conclusion that the tasks, and the amount of time spent in each task, varied from SSM to SSM and thus, the individual plaintiffs,

---

[4]  Defendant objects that the task list in the follow-up questionnaire is one-sided by including only tasks that plaintiffs have predetermined to be "non-exempt," and failing to include any tasks which include management or operational duties.

24 - FINDINGS & RECOMMENDATION/ORDER

even with the same job title and even though all working at bank branches more than forty hours per week and all classified as exempt from overtime, had individualized performance of their jobs, rendering them not similarly situated for the purposes of a collective action.

The next factor in the second stage "similarly situated" analysis is the various defenses available to the defendant. Defendant will rely on the administrative and executive exemptions from overtime in 29 U.S.C. § 213(a)(1) (creating exemption to employer's requirement to pay overtime for employees "employed in a bona fide executive, administrative, or professional capacity.").[5]

Administrative regulations further define the scope of the exemptions. Regulations in effect before August 23, 2004, encompassed both a "long test" and a "short test" for the administrative capacity exception. McLaughlin v. Nationwide Mut. Ins. Co., No. CV-02-6205-TC, 2004 WL 1857112, at *2 (D. Or. Aug. 18, 2004) (citing former 29 C.F.R. §§ 541.2(a) – (e), 541.2(e)(2), 541.214). One of the three questions comprising the short test is

_____

[5] Defenses to the wage claim are relevant to the similarly situated analysis under the second stage inquiry. While defendant will ultimately bear the burden of proof on its defenses in the merits stage of the case, Gieg v. DDR, Inc., 407 F.3d 1038, 1045 (9th Cir. 2005) (employer has burden of demonstrating that a particular employee, or category of employees, "is not within the ambit of the [FLSA] overtime provision"), plaintiffs nonetheless bear the burden of proof on the similarly situated analysis. E.g., Pfohl, 2004 WL 554834, at *7 (C.D. Cal. 2004) ("[T]he issue presently before this Court is whether this case should proceed as a collective action. Plaintiff bears the burden of proving this, and it is for him to present evidence that all putative members were paid similarly and performed similar job duties.").

25 - FINDINGS & RECOMMENDATION/ORDER

whether the employee's "primary duty" consists of the performance

of office or nonmanual work directly related to management policies

or general business operations of the employer or the employer's

customers. Id. at *3. While the long test does not use the term

"primary duty," it does require an analysis of the type of work

performed by the employee and an assessment of the percentage of

time in a workweek devoted to certain activities. Id. at *2 n.1.

The executive employee regulation in effect before August 23,

2004, also examined the employee's "primary duty," and assessed the

percentage of time in a workweek devoted to certain activities. 29

C.F.R. § 541.1 (2004).[6]

Thus, application of the administrative or executive defenses

requires an analysis of the SSM's "primary duty," which in turn

examines the amount of time spent on managerial or non-managerial

tasks, as well as other factors such as the "relative importance of

the managerial duties as compared with other types of duties, the

_____

[6] I do not know, at this stage, if the parties dispute
whether the old or new regulations apply to the claim. I assume
for the purposes of this Findings & Recommendation, that the
regulations in effect at the time the claim was filed, apply. I
further note, however, that the issue of "primary duty," which is
the central issue raised by the administrative and executive
exception defenses in regard to the similarly situated discussion
here, appears to be relevant under the old or new regulations.
See 29 C.F.R. § 541.201 (2005) (to qualify for the administrative
exception, an employee's primary duty must be the performance of
work directly related to the management or general business
operations of the employer or the employer's customers); 29
C.F.R. § 541.100 (2005) (defining an executive employee as one
who, inter alia, has management of the enterprise or of a
customarily recognized department, as a primary duty); see also
McLaughlin, 2004 WL 1857112, at *4 n.2 (noting that the general
criteria for employees employed in a bonafide administrative
capacity are essentially the same under the old and new
regulations).

26 - FINDINGS & RECOMMENDATION/ORDER

frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor". 29 C.F.R. § 541.103 (the amount of time spent in managerial duties is a "useful guide" in determining if management is a primary duty of the employee but is not the sole test); see also Murray v. Stuckey's, Inc., 939 F.2d 614, 618 (8th Cir. 1991) (district court's finding that managers spent 65-90 percent of their time on non-managerial duties was relevant, but not a controlling factor; noting that "'the person in charge of a store has management as his primary duty, even though he spends the majority of time on non-exempt work and makes few significant decisions'") (quoting Donovan v. Burger King Corp., 672 F.2d 221, 227 (1st Cir. 1982)); Horne v. Crown Cent. Petroleum, Inc., 775 F. Supp. 189, 190 (D.S.C. 1991) (fact that amount of time spent on non-management tasks is greater than 50 percent was not dispositive when non-management duties were performed simultaneous with the supervision of employees or other management tasks and other factors support a finding that the employee's primary duty is managerial); Russell v. Mini Mart, Inc., 711 F. Supp. 556, 559 (D. Mon. 1988) (even though manager spent at least half of his time on non-exempt work, he was still an exempt executive employee when his managerial responsibilities were the most important and most of the oversight of the operation was carried out simultaneously with clerical duties).

The record suggests the presence of common questions of law regarding the nature of a particular duty or task performed by an SSM and whether it may be considered non-exempt or managerial in

27 - FINDINGS & RECOMMENDATION/ORDER

1  nature.  However, the relevant law requires an analysis not only of

2  the nature of the task, but also of the relationship of the

3  employee to the task, and to the other tasks as well, including,

4  although not as a determinative factor, the percentage of time an

5  SSM spends in any given task.  The record, as explained in the

6  previous section, demonstrates that time spent in various tasks

7  varies tremendously from one SSM to another, making the collective

8  action an inefficient, rather than efficient, device.

9       The third factor in the second stage analysis is to address

10 any other fairness or procedural questions.  The parties have

11 identified none.

12 IV.  Tolling Motion

13      Along with their renewed certification motion, plaintiffs also

14 seek to toll the statute of limitations for all putative collective

15 action members as of the date of the filing of this action through

16 the pendency of the notice process.  Because I recommend that the

17 renewed motion for certification be denied, I recommend that the

18 tolling motion be denied as moot.

19                           CONCLUSION

20      I recommend that plaintiffs' renewed motion for certification

21 (#302) be denied, and that plaintiffs' motion for tolling (#302),

22 be denied as moot.  I grant defendant's motion to strike (#314).

23                        SCHEDULING ORDER

24      The above Findings and Recommendation will be referred to a

25 United States District Judge for review.  Objections, if any, are

26 due October 18, 2006.  If no objections are filed, review of the

27 Findings and Recommendation will go under advisement on that date.

28      If objections are filed, a response to the objections is due

28 - FINDINGS & RECOMMENDATION/ORDER

1  November 1, 2006, and the review of the Findings and Recommendation

2  will go under advisement on that date.

3       IT IS SO ORDERED.

4              Dated this  3rd   day of   October  , 2006.

5

6

7                    /s/ Dennis James Hubel
                     Dennis James Hubel
8                    United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29 - FINDINGS & RECOMMENDATION/ORDER